### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | |
| Plaintiff, | Case No. 23-cv-02558 |
| v. | Judge Mary M. Rowland |
| METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, CITY OF CHICAGO, | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Travelers Property Casualty Company of America brings suit against Defendant City of Chicago and Defendant Metropolitan Water Reclamation District of Greater Chicago alleging takings claims under the United States Constitution and the Illinois Constitution, as well as state law claims. For the reasons stated herein, Defendants' Motions to Dismiss [49] [54] are granted in part and denied in part.

### I.   Background

The following factual allegations taken from the operative complaint [40][1] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

---

[1] Travelers attempts to plead additional facts in its responses to Defendants' motions to dismiss. *See e.g.*, [55], [56]. To the extent those facts are not contained in the operative complaint, the Court will not consider them. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (it

In the late 1800's, Chicago's sewage was dumped into the Chicago River which then flowed into Lake Michigan, the source of Chicago's drinking water. [40] at ¶ 11. In 1900, the construction of the Chicago Sanitary and Ship Canal reversed the natural flow of the Chicago River, thereby allowing Chicago's sewage to flow towards the Des Plaines, Illinois, and Mississippi Rivers and away from Lake Michigan. *Id.* at ¶¶ 12-14.

Defendant City of Chicago (the "City") owns and maintains a combined stormwater and wastewater sewer system and has authority over activities related to stormwater and sewage management. *Id.* at ¶¶ 4-5, 15. Defendant Metropolitan Water Reclamation District of Greater Chicago (the "District") has authority to plan, manage, and control activities relating to stormwater management in Cook County. *Id.* at ¶ 10. The City and the District are individually and/or jointly responsible for the design and operations of the sewer system servicing Chicago, including Lower Wacker Drive and properties on South Wacker Drive. *Id.* at ¶ 16. The City and the District also individually or jointly control locks, gates, and other water control devices along the Chicago Area Waterway System, including the Chicago River. *Id.* at ¶ 75.

The Willis Tower, originally known as the Sears Tower, is a historical high-rise building located on South Wacker Drive in Chicago, Illinois that is owned and operated by BRE 312 Owner LLC ("Owner"). *Id.* at ¶¶ 1-2. Plaintiff Travelers

---

is an "axiomatic rule that a plaintiff may not amend his complaint in his response brief").

Property Casualty Company of America ("Travelers"), a property casualty affiliate of the Travelers Indemnity Company, provided a builders-risk insurance policy to Owner for construction remodeling being done at Willis Tower. *Id.* at ¶ 3.

On May 17, 2020, the Chicagoland area experienced a significant rainfall event. *Id.* at ¶ 45. On May 17 and 18, 2020, water back flowed through drains and catch basins along Lower Wacker Drive and inundated the Willis Tower with over a million gallons of non-potable water. *Id.* at ¶¶ 22, 89. The flooding at Willis Tower resulted in property damage, damage and delay to ongoing construction projects, and damages related to operations totaling more than $26 million. *Id.* at ¶¶ 23, 65. Pursuant to the insurance policy it had issued to Owner, Travelers paid Owner for the property damage and other expenses, thereby becoming subrogated to the rights of Owner for the amount Travelers paid. *Id.* at ¶¶ 25-27, 66.

Travelers alleges that the City and District have known for more than 14 years that Chicago's sewer and stormwater system is undersized and susceptible to being overwhelmed by rainfall which would result in water and waste intrusion onto private property. *Id.* at ¶ 19. Travelers alleges that the City and the District knew or should have known that Chicago's stormwater and sewage management systems were inadequate and would result in damage to private property like the Willis Tower during rainfall events. *Id.* at ¶¶ 58-62. Travelers also alleges that the City and District were aware that downstream locks and gates would need to be opened to lower water levels and prevent water and waste intrusion into private property, but they failed to do so in time. *Id.* at ¶¶ 39-41.

Travelers brings twelve claims against Defendants, alleging that both the City and the District violated the Takings Clause of the Illinois Constitution (Counts I and IV), the damages provision of the Takings Clause of the Illinois Constitution (Counts II and V), and the Takings Clause of the United States Constitution (Counts III and VI). Travelers also brings common law negligence claims (Counts VII and VIII), breach of statutory duty claims (Counts IX and X), and negligent failure to remedy known dangerous condition claims (Counts XI and XII) against both the City and the District.

The City and the District each moved to dismiss Travelers' complaint for failure to state a claim. [49]; [54].

## II.    Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins.*

4

*Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. Analysis

### A. Constitutional Claims

The Fifth Amendment of the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Illinois constitution similarly provides that "[p]rivate property shall not be taken *or damaged* for public use without just compensation as provided by law." Ill. Const. art. I, § 15 (emphasis added). The Illinois Takings Clause protects against governmental damage to private property in addition to governmental taking of private property. The Illinois Supreme Court has linked interpretations of the Illinois Takings Clauses and its federal counterpart where a plaintiff brings a claim for taken property as opposed to damaged property. *See Hampton v. Metro. Water*

*Reclamation Dist. of Greater Chicago*, 57 N.E.3d 1229, 1236 (Ill. 2016). Here, Travelers brings claims for the taking of property under both the U.S. and Illinois constitutions, as well as claims for the damage of property under the Illinois constitution. [40] at ¶¶ 98-149 (Counts I-VI). The Court will therefore analyze the taking claims together and separately analyze the damages provision claims.

### i. Takings Clause

"[G]overnment-induced flooding of limited duration may be compensable." *Arkansas Game and Fish Commn. v. U.S.*, 568 U.S. 23, 34 (2012). To assert a takings claim, a plaintiff must plausibly allege that "the government caused or contributed to the inundation." *Billie v. Village of Channahon, Illinois*, 58 F.4th 905, 906 (7th Cir. 2023). Therefore, a takings claim must be based "on affirmative government acts," and the government cannot be liable for a mere "failure to act." *St. Bernard Par. Govt. v. U.S.*, 887 F.3d 1354, 1361 (Fed. Cir. 2018); *see also Nicholson v. U.S.*, 77 Fed. Cl. 605, 620 (Ct. Cl. 2007) ("In no case that we know of has a governmental agency's failure to act or to perform its duties correctly been ruled a taking.").

### 1. Capacity of the Sewer and Stormwater System

First, Travelers' allegations regarding the capacity of Chicago's sewer and stormwater system fail to plausibly allege an affirmative government act which induced the flooding at Willis Tower. Travelers alleges that the flooding was "due to failure in the design, maintenance, and/or operation of the stormwater systems and combined sewer system" and that the City and District have a policy of "rejecting adequate remedies to undersized water management systems in favor of smaller and

6

otherwise deficient systems." [40] at ¶¶ 100-101, 126-127, 119, 145. Travelers argues that Defendants built an undersized sewer system from the beginning, *see* [55] at 7 ("The City's construction of the combined sewer system ultimately did not follow these requirements including, but not limited to, being undersized."), and that Defendants should have enlarged the system after it was built, *see* [56] at 10 ("The repeated decision to build an undersized sewer and water management system and risk potential overwhelm was ongoing as the system continued to be built and updated.").

Travelers does not plausibly allege that the initial construction of the sewer and stormwater system caused the 2020 flooding of the Willis Tower. Travelers asserts that there were failures in the design of the system and that it was constructed "undersized," but provides no facts to support these conclusory allegations. Travelers alleges that the City "approved the construction of its first sewer system" in the late 1800's, but then provides no other facts regarding the initial construction of the sewer system. *See* [40] at ¶ 11. Therefore, Travelers fails to plausibly allege that the initial construction of Chicago's sewer and stormwater system, in the late 1800's, was an affirmative government action which induced the flooding at Willis Tower in May 2020.

Travelers' allegations that Defendants should have modified the sewer and stormwater system to enlarge it also fail to plausibly allege an affirmative government action. Travelers asserts that Defendants "rejected adequate remedies" to address an undersized system. [40] at ¶¶ 119, 145. Travelers argues that it was therefore a "repeated decision to build an undersized" system, [56] at 10, and that

"the City failed to increase the size and capacity of the combined sewer system in the reconstruction and utility relocation that took place from approximately 2009 to 2013." [55] at 2. These allegations are simply that the City and District failed to act.

Courts have found that takings claims based on a municipality's failure to act, even where the municipality was allegedly aware of an issue, are not takings. *See Tzakis v. Maine Township*, 181 N.E.3d 812, 822 (Ill. 2020) (affirming dismissal of flooding takings claim based on alleged failure to redesign stormwater system); *Drake v. Vill. of Lima*, 530 F. Supp. 3d 285, 292 (W.D.N.Y. 2021) (dismissing flooding takings claim based on "Defendants' alleged negligence in maintaining and operating the Sewer Line, resulting in a clog and associated backflow."); *Sunflower Spa LLC v. City of Appleton*, No. 14-C-861, 2015 WL 4276762, at *2 (E.D. Wis. July 14, 2015) (granting summary judgment and dismissing flooding takings claim because "failing to replace or repair water mains is not government action"); *New Holland Village Condo. v. DeStaso Enterprises Ltd.*, 139 F. Supp. 2d 499, 503 (S.D.N.Y. 2001) (dismissing flooding takings claim based on failure to repair dam and failure to warn of possible flood damage), *aff'd sub nom. New Holland Village v. Destaso Enterprises Ltd.*, 29 Fed. Appx. 760 (2d Cir. 2002) (unpublished); s*ee also St. Bernard*, 887 F.3d at 1360 ("While the theory that the government failed to maintain or modify a government-constructed project may state a tort claim, it does not state a takings claim.").

Therefore, Travelers fails to plausibly allege a takings claim on the basis of inadequate capacity in the sewer and stormwater system because it does not allege any affirmative government action which induced the May 2020 flooding.

## 2. Downstream Locks and Gates

Travelers also alleges that the City and the District "individually or jointly, managed and controlled the height of the Chicago River," were "aware that all available downstream locks and gates would need to be opened immediately to prevent water and waste intrusion into private property," and "delayed opening downstream locks and gates." [40] at ¶¶ 36, 39-40.

The City points out that it does not operate or control the locks and gates at issue. [54] at 9-10. Publicly available records[2] support the City's argument. *See* 33 C.F.R. § 207.420(a)(1) ("The elevation to be maintained in the Chicago River at the west end of the lock will be determined from time to time by the U.S. District Engineer, Chicago, Illinois."); § 207.420(b)(1) ("The lock shall be operated by the Metropolitan Sanitary District of Chicago under the general supervision of the U.S. District Engineer, Chicago, Illinois."); *Michigan v. U.S. Army Corps of Engineers*, No. 10-CV-4457, 2010 WL 5018559, at *3 (N.D. Ill. Dec. 2, 2010) ("The [United States

---

[2] "Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). "A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Id.* at 773-74; *see also Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) ("The district court properly considered the public court documents in deciding the defendants' motions to dismiss").

Army] Corps [of Engineers] owns the sluice gates at the O'Brien Lock and operates them under the direction of the District. The District owns and operates the sluice gates at the Chicago River Controlling Works."), *aff'd on other grounds,* 667 F.3d 765 (7th Cir. 2011). And despite alleging that both Defendants control the height of the river and delayed opening downstream locks and gates, Travelers' specific allegations about the opening of locks and gates pertain only to the District. Travelers alleges that the District "opened the locks and gates at CRCW to Lake Michigan," that the District "intentionally opened the floodgates and/or locks of the Chicago River," and that the District "routinely delays opening" gates. *Id.* at ¶¶ 47-49.

Because Travelers does not allege that the City took any specific action with regard to opening locks and gates, and in light of the public records showing that the City does not control or operate the locks and gates, Travelers fails to plausibly allege that the City took any affirmative action which induced the May 2020 flooding.

As for the District, Travelers' allegations regarding the District's actions are contradicted by publicly available data from the United States Geological Survey ("USGS"), an agency of the Department of the Interior.[3] According to Travelers, on May 16, 2020, the forecasted rainstorm required the District to lower the water level

---

[3] The Court may take judicial notice of information from an official government website which is not subject to reasonable dispute. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (holding that information from National Personnel Records Center, Military Personnel Records "is appropriate for judicial notice because it is not subject to reasonable dispute"); *Outley v. City of Chicago*, 407 F. Supp. 3d 752, 767 (N.D. Ill. 2019) (taking judicial notice of information from the city's website); *Ambrosetti v. Oregon Catholic Press*, 458 F. Supp. 3d 1013, 1017 n.1 (N.D. Ind. 2020) ("In particular, the Court may take judicial notice of public record information obtained from an official government website.").

to -3.00 CCD, but the District "delayed opening downstream locks and gates" and "never lowered the water level at the Chicago River Lock & Controlling Works to -3.00 CCD between the storm prediction on May 16, 2020, and the time of the water inundation at the Willis Tower." [40] at ¶ 37, 40-41. Publicly available data approved for publication by the USGS regarding the height of the Chicago River at the Chicago Lock shows that the water level was below -3.00 CCD at the end of May 16, 2020 and heading into May 17, 2020.[4]

Official government data disproves Travelers' allegations that the District never lowered the height of the Chicago River to -3.00 CCD due to delaying the opening of downstream gates and locks. Therefore, Travelers has not plausibly alleged that an affirmative action by the District induced the flooding at the Willis Tower.

Accordingly, Traveler's takings claims under the federal and Illinois constitutions against the District (Counts I and III) and the City (Counts IV and VI) are dismissed.

### ii. Damages Provision of the Illinois Takings Clause

The Illinois constitution's takings clause also protects private property from being damaged for public use. Ill. Const. art. I, § 15. Property is "damaged" under the Illinois takings clause if there is "any direct physical disturbance of a right, either

---

[4] *See* https://nwis.waterservices.usgs.gov/nwis/iv/?sites=05536121&parameterCd=00065&startDT=2020-05-17T00:00:00.000-05:00&endDT=2020-05-17T23:59:59.999-05:00&siteStatus=all&format=rdb.

public or private, which an owner enjoys in connection with his property," the right is one "which gives the property an additional value," and the right was "disturbed in a way that inflicts a special damage with respect to the property in excess of that sustained by the public generally." *Hampton*, 57 N.E.3d at 1240 (quoting *Citizens Utilities Co. of Illinois v. Metropolitan Sanitary District of Greater Chicago,* 322 N.E.2d 857 (Ill. 1974)). "However, where the physical disturbance does not actually impair the value of the plaintiff's property, 'no action will lie.'" *Berry v. City of Chicago*, 181 N.E.3d 679, 689 (Ill. 2020) (quoting *City of Winchester v. Ring*, 144 N.E. 333, 336 (Ill. 1924)).

In *Berry*, the Supreme Court of Illinois affirmed the trial court's dismissal of a takings clause damages claim where there were "no allegations in plaintiffs' complaint that any property has depreciated in value because of" the alleged government action. 181 N.E.3d at 690. Travelers' complaint similarly contains no allegations that the May 2020 flooding of the Willis Towers' lower levels depreciated the value of the Willis Tower. Travelers alleges that costs of $26 million were incurred due to damage to real and personal property, other losses of income, and expenses because of the flooding. [40] at ¶ 65. While that is a significant sum of money, it does not indicate whether there was any loss in the value of the Willis Tower. "If the injury amounts only to an inconvenience or discomfort to the occupants of the property but does not affect the value of the property, it is not within the provision of the constitution even though a personal action would lie therefor." *Berry*, 181 N.E.3d at 690 (quoting *City of Winchester*, 144 N.E. at 336).

12

Accordingly, Travelers' claims under the damages provision of the Illinois Takings clause against the District (Count II) and the City (Count V) are dismissed.

### B. State Law Claims

The usual practice in the Seventh Circuit is to "dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). This case was originally filed in state court and the District removed the action to federal court pursuant to 28 U.S.C. § 1442(a). [1]. The Court denied Travelers' motion to remand [28] after finding that the District was a person acting under federal authority and had colorable federal defenses. [34]. Despite the dismissal of Travelers' federal claims, the District may still respond to Travelers' state law claims that the District was acting under federal authority and assert a government contractor federal defense. *See* [34]. Even if that defense is ultimately unsuccessful, it is a question for federal, not state, courts to answer. *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012) ("At this point, we are concerned with who makes the ultimate determination, not what that determination will be."). Therefore, the Court will retain jurisdiction and address Travelers' state law claims.

### i. Common Law Negligence

Travelers brings common law negligence claims against the District (Count VII) and the City (Count VIII). To state a claim for negligence under Illinois law, a plaintiff must allege 1) the existence of a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty of care; and (3) an injury proximately caused by

that breach. *Monson v. City of Danville*, 115 N.E.3d 81, 95 (Ill. 2018). The District and City both argue that they do not owe Travelers a common law duty to prevent flooding. [49] at 13; [54] at 18-19. The City also argues that the Illinois Tort Immunity Act bars Travelers' state law claims. [54] at 14.

Travelers alleges that the District and City both owed a duty to Owner to "maintain and operate its stormwater and combined sewer system … in a safe and proper fashion so as to prevent the unauthorized waste and water intrusion onto private property due to foreseeable rainfall conditions." [40] at ¶¶ 151, 156. Travelers alleges that Defendants breached this duty by failing to: open sufficient gates, provide adequate barriers, provide adequate sewers and structures, preform pumping in advance of rainfall, properly maintain locks and gates systems, lowering the height of the Chicago River, and create a sufficiently sized water management system. *Id.* at ¶¶ 152, 157. According to Travelers, Defendants' actions caused the flooding at Willis Tower resulting in damage to real and personal property and other losses of income and expenses. *Id.* at ¶¶ 154, 159.

Travelers' allegations are not that Defendants had a duty to prevent flooding, but rather that they had a duty to maintain and operate the stormwater and sewer system in a safe manner. A municipality is not liable for a "failure initially to provide improvements," but a municipality does have "a duty to maintain those improvements in a condition conducive to the safety" of the public. *Santelli v. City of Chicago*, 584 N.E.2d 456, 459 (Ill. App. 1st Dist. 1991) (quoting *Thorsen v. City of Chicago*, 392 N.E.2d 716, 723 (Ill. App. 1st Dist. 1979)). In *Santelli*, the plaintiff

14

"alleged that the city was negligent for failing to maintain" a curved road, which the court found was a claim for negligence "in accord with established Illinois law." 584 N.E.2d at 460. Similarly, Travelers alleges that the City and District negligently maintained and operated the stormwater and sewer system in an unsafe fashion. Travelers has therefore plausibly alleged a claim of common law negligence.

The City's assertion that the Tort Immunity Act applies is premature. "The Illinois Tort Immunity Act is an affirmative defense, and a plaintiff does not have to plead around affirmative defenses." *Prokop v. Hileman*, 588 F. Supp. 3d 825, 844 (N.D. Ill. 2022); *see also Sterling v. Bd. of Educ. of Evanston Township High Sch. Dist. 202*, No. 19-CV-05599, 2021 WL 809763, at *7 (N.D. Ill. Mar. 3, 2021) ("[The Tort Immunity Act] provides affirmative defenses, and plaintiffs generally need not anticipate and overcome affirmative defenses in their complaint."). Defendants may ultimately be able to show that they are immune from liability if they can show that the City and District's alleged actions were discretionary rather than ministerial. *See Nichols v. City of Chicago Heights*, 31 N.E.3d 824, 838–39 (Ill. App. 1st Dist. 2015) (affirming summary judgment and finding that decisions "made regarding the maintenance and improvement of its sewer system were discretionary in nature."). However, that determination is premature at the motion to dismiss stage. *See id.* at 839 (relying on letters from city officials and engineering contractor to determine that decisions were discretionary).

Defendants' motions to dismiss Counts VII and VIII are denied.

### ii. Statutory Claims

Travelers alleges that the City and District breached their statutory duty under 745 ILCS 10/3-102 to exercise ordinary care to maintain its property in a reasonably safe condition. [40] at ¶¶ 163 (Count IX), 174 (Count X). Travelers also alleges that the City and District breached their duty to remedy unsafe conditions under 745 ILCS 10/3-103(a). *Id.* at ¶¶ 186 (Count XI), 198 (Count XII).

Travelers relies on the Illinois Tort Immunity Act, but that statute "grants only immunities and defenses; it does not create duties." *Village of Bloomingdale v. CDG Enterprises, Inc.*, 752 N.E.2d 1090, 1096 (Ill. 2001) (citing 745 ILCS 10/1-101.1(a)). "[T]he Act merely codifies those duties existing at common law, to which the subsequently delineated immunities apply." *Id.* (quoting *Barnett v. Zion Park District,* 665 N.E.2d 808, 812 (Ill. 1996)). Therefore, a court "refer[s] to the common law to determine the duties a local public entity holds" but then looks to the Tort Immunity Act "to determine whether that entity is liable for the breach of a duty." *Id.*

Travelers also relies on Section 19 of the Metropolitan Water Reclamation District Act, 70 ILCS 2605/19, to argue the District is statutorily liable. [40] at ¶ 170. Section 19 provides that the District "shall be liable for all damages to real estate within or without such district which shall be overflowed or otherwise damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet or other improvement under the provisions of this act." 70 ILCS 2605/19. However, "[t]he phrase 'channel, ditch, drain, outlet, or other improvement' does not refer to the water management or sewage systems maintained by the District" and instead

"refers only to the main channel." *Town of Cicero v. Metro. Water Reclamation Dist. of Greater Chicago*, 976 N.E.2d 400, 407 (Ill. App. 1st Dist. 2012). As the Illinois appellate court explained, Section 19 was enacted to compensate downstream landowners for "damages to their property resulting from construction of the main channel and reversal of the Chicago River." *Id.* at 410. Section 19 does not provide Travelers with "an underlying cause of action or a right to be free from backup sewage flooding." *Id.* at 414.

The Illinois Tort Immunity Act and Section 19 of the Metropolitan Water Reclamation District Act do not create a statutory duty or liability which Defendants are subject to. Counts IX, X, XI, and XII are therefore duplicative of Travelers' common law negligence claims and are dismissed.

## IV.    Conclusion

For the stated reasons, Defendants' Motions to Dismiss [49] [54] are granted in part and denied in part. Counts I-VI and IX-XII are dismissed. The motions to dismiss are denied as to Counts VII and VIII.

E N T E R:

Dated: February 24, 2025

_____
MARY M. ROWLAND
United States District Judge

17